1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   BRIAN DEVERICK LEWIS,                    Case No.:  3:22-cv-0029-GPC-DEB
     CDCR #J-49028
12                                            **ORDER: (1) GRANTING MOTION**
13                                            **TO PROCEED IN FORMA**
                                 Plaintiff,   **PAUPERIS [ECF No. 7]**
14          vs.
                                              **(2) DISMISSING DEFENDANTS**
15                                            **GIPSON & DAVIS AND**
16   DANIEL PARAMO, Warden, A.                **PLAINTIFF'S DUE PROCESS &**
     HAMMETT, J. MENDEZ, R. BATTAD,           **EQUAL PROTECTION CLAIMS**
17   F. GRISEZ, R. ESQUILIN, R. DAVIS,        **FOR FAILING TO STATE A**
     CONNIE GIPSON                            **CLAIM UNDER 28 U.S.C.**
18                                            **§§ 1915(e)(2) AND 1915A;**
                                Defendants.
19
                                              **(3) DIRECTING U.S. MARSHAL TO**
20                                            **EFFECT SERVICE UPON**
21                                            **REMAINING DEFENDANTS AS TO**
                                              **PLAINTIFF'S FIRST**
22                                            **AMENDMENT CLAIMS ONLY**
23                                            **PURSUANT TO 28 U.S.C. § 1915(d)**
                                              **AND FED. R. CIV. P. 4(c)(3)**
24
25
26              **I.      INTRODUCTION**
27          On January 7, 2022, Brian Deverick Lewis ("Plaintiff" or "Lewis"), an inmate
28   currently incarcerated at California State Prison, located in Corcoran, California and

                                        1

proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, along with a Motion to Proceed In Forma Pauperis ("IFP"). ECF Nos. 1 & 2. The Court denied Plaintiff's IFP Motion and dismissed his Complaint on April 15, 2022 because Plaintiff's trust account statement indicated he could afford the filing fee. ECF No. 3. The Court gave Lewis 45 days to either pay the filing fee or provide adequate proof of his inability to pay. *See id.* After an extension of time, Plaintiff filed a First Amended Complaint ("FAC") and a renewed Motion to Proceed IFP.  ECF Nos. 6 & 7.

## II.    MOTION TO PROCEED IN FORMA PAUPERIS

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, the Prison Litigation Reform Act's ("PLRA") amendments to § 1915 require that all prisoners who proceed IFP to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 83–84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires all persons seeking to proceed without full prepayment of fees to file an affidavit that includes a statement of all assets possessed and demonstrates an inability to pay. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). In support of this affidavit, the PLRA also requires prisoners to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc.  Fee Schedule, § 14 (eff. Dec. 1, 2021)). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 84.

In support of his IFP Motion, Plaintiff has submitted a copy of his Inmate Trust Account Statement. *See* ECF No. 7 at 4–6; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. The statement shows Lewis maintained an average monthly balance of $217.60 and had $126.47 in average monthly deposits credited to his account over the 6-month period immediately preceding the filing of his Complaint. His available balance as of April 20, 2022, was $0.53. ECF No. 7 at 5. Therefore, the Court **GRANTS** Plaintiff's Renewed Motion to Proceed IFP [ECF No. 7], declines to exact any initial filing fee because his prison certificates indicate he may have "no means to pay it," *Bruce*, 577 U.S. at 84, and directs the Secretary of the California Department of Corrections and Rehabilitation, or her designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

### III. SCREENING PURUSANT TO 28 U.S.C. § 1915(e)(2)(B)

**A. Standard of Review**

Because Plaintiff is a prisoner proceeding IFP, his FAC requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C.

§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the contest of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The "mere possibility of misconduct" or unadorned, "the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.* at 678–79.

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 40 U.S. 386 U.S. 386, 393–94 (1989) (internal quotation marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.      Plaintiff's Allegations**

In his FAC, Plaintiff alleges he was an inmate at Richard J. Donovan Correctional Facility ("RJD") from 2012 to 2017. FAC, ECF No. 6 at 15. On September 6, 2014, Defendant R. Davis ("Davis"), a Correctional Lieutenant, ordered Lewis confined to quarters ("CTQ") for 10 days. *Id.* at 42. Five days later, on September 11, 2014, Davis conducted a Rules Violation Report ("RVR") hearing related to alleged misconduct which had occurred in August 2014. *Id.* at 39. After the hearing, Davis ordered Lewis CTQ for an additional 10 days. Lewis alleges this resulted in his serving 15 consecutive days CTQ, in violation of prison policies set forth in the title 15 of the California Code of Regulations, section 2233(a), which limits consecutive days of CTQ to 10 days.[2] *Id.* at 39, 42. For reasons not clear in the FAC, Davis "reheard" the RVR on October 11, 2014. *Id.* at 39. Plaintiff refused to attend the hearing because Davis was the Senior Hearing Officer ("SHO"). *Id.* at 40. At the conclusion of the hearing, Davis ordered Lewis CTQ for 60 consecutive days and placed him on "C-status." *Id.* at 42. Lewis had previously been assigned A-1-status, which allowed him to work. On C-status, Plaintiff was unable to work, his privileges were restricted, and he was unable to earn custody credits. *Id.* at 43. Lewis alleges that his re-classification to C-status was in violation of state regulations, which require a Unit Classification Committee ("UCC") hearing prior to a change in classification. *Id.*

The rest of Lewis's allegations relate to events which took place in 2016. Lewis has been a part of the RJD Men's Advisory Council ("MAC")[3] since 2014. *Id.* at 4. In February

---

[2] Lewis alleges that on March 16, 2015, G. Stratton, Chief Deputy Warden, "found that Davis [had] violated Plaintiff's rights when he CTQ'd Plaintiff for 15 consecutive days." FAC at 42.

[3] Title 15 of the California Code of Regulations sets forth the guidelines for the Men's Advisory Council, which is established by the warden "to advise and communicate with the warden and other staff those matters of common interest and concern to the inmate general population." Cal. Code Regs. tit. 15, § 3230 (1)(a).

2016, Lewis became the MAC representative for culinary issues. *Id.* at 4, 19. In July 2016, Lewis learned another inmate, McCloud, was "unassigned" to the kitchen and replaced with an inmate whose custody classification level, "A close custody," did not permit him to work in the kitchen for security reasons. *Id.* at 19–20. As the culinary MAC representative, Lewis spoke to McCloud, and also to the inmate who replaced McCloud, who told Lewis he "was not assigned to the position" because of his close custody status but was working as a "volunteer." *Id.* at 20.

On July 13, 2016, Lewis spoke to Defendants J. Mendez ("Mendez"), a Correctional Officer, and R. Battad ("Battad"), a Correctional Supervisor Cook, and asked why McCloud had been replaced with a close custody inmate. *Id.* at 20. Plaintiff told Mendez that inmates with problems in the kitchen come to him with their issues because he is the "culinary MAC." *Id.* at 20. Mendez told Lewis that McCloud would either be given another position with equal pay or his old position back. Plaintiff helped McCloud fill out a "Form 22,"[4] in which he asked for his kitchen job back. Battad and Mendez never returned the Form 22s to McCloud and he did not receive his position back. *Id.* at 21.

On July 23, 2016, Plaintiff submitted his own Form 22, alleging Mendez and Battad had "arbitrarily removed McCloud from his position and replaced him with a close custody inmate in violation of [California Code of Regulations] title 15, sec. 3377.1(a)(2)(B)" *Id.* Later that day, Lewis spoke to Battad, who told him Mendez "no longer wanted Plaintiff on the shift because Plaintiff was 'writing 602s.'" *Id.* Defendant N. Hammett ("Hammett"),

_____

[4] Regulations in place at the time related to "Form 22" stated: "Inmates and parolees may request interviews with staff and/or request items and services via a written request process," pursuant to a "CDCR Form 22 (10/09), Inmate/Parolee Request for Interview, Item or Service." 15 Cal. Code Regs. § 3086(a), (c) (repealed). A Form 22 was intended to facilitate the "timely resolution of routine matters through an effective and non-conflictive communication process," pursuant to which, "Department staff shall attempt to resolve inmate and parolee issues expeditiously." *Id.*, § 3086(a).

a Correctional Officer, who had recently started working in the kitchen, also called Lewis a "troublemaker" told him he was not going to "put up" with Lewis's "MAC Rep bull" and "all that 602 shit." *Id.*

On August 6, 2016, Lewis reported for his job in the kitchen at 4:00 a.m. *Id.* at 22. At 6:00 a.m., Lewis realized he needed his inhaler. Hammett released him to go get it from his cell. *Id.* at 22. When Lewis could not find his inhaler in his cell, he had a staff member call "culinary" and tell Battad that he was going to "sick call" to use the inhaler there. *Id.* When Lewis returned to the kitchen at about 6:00 a.m., Hammett told him to "get against the wall." *Id.* Hammett searched Plaintiff and then told him, "Get outta' here. You're done." Plaintiff asked to speak to Battad but Hammett would not let him. Plaintiff returned to the kitchen at about 9:00 a.m. to talk to Battad, who told Plaintiff he was "fired." *Id.* Battad falsely accused Lewis of leaving the kitchen without permission and letting the cereal burn. *Id.* 22–23. Hammett prepared an RVR in which he "falsely stated" that when Lewis returned to the kitchen he had gotten aggressive and pointed his fingers in Hammettt's face. *Id.* at 25.

On August 8, 2016, Plaintiff was not sent to work in the kitchen. *Id.* at 23. Lewis spoke to Mendez, who explained that Battad had informed him that Plaintiff let the cereal burn when he left the kitchen. When Lewis told Mendez that was not true, Mendez said, "that's what [Battad's] going with" when he writes you a "115."[5] *Id.* Lewis told Mendez he was going to file a 602 grievance and Mendez responded, "if [you] file paperwork [I] would not be able to give [you your] job back." *Id.* Plaintiff immediately filed two Form 22s and gave them to Battad. *Id.* at 23. In his responses to Plaintiff's Form 22s, Battad repeated his purportedly false allegation that Lewis had left the culinary area without permission and let the cereal burn. *Id.* at 24. In the days the followed, Plaintiff alleges

[5] "115" refers to CDC Form 115, which accompanies a Rule Violation Report. *See* Cal. Code Regs. tit. 15, § 3320(a).

Mendez contacted Lewis' physician and asked the doctor to "disapprove" Plaintiff's work clearance. *Id.* at 24. According to Lewis, Mendez also contacted Lewis's correction counselor and created a "false document" that stated Lewis had been aggressive with Hammett on August 6, 2016.[6] *Id.* The document also falsely stated that Lewis had been to a UCC hearing and the committee had found cause to remove him from his job. *Id.*

Lewis returned to the kitchen on August 21, 2016 and gave Battad another Form 22 in which Lewis inquired about the status of his job. Battad responded to the Form 22, stating that Lewis had a "UCC hearing on August 16, 2016" that removed Plaintiff from his cook position. Plaintiff spoke to his correctional counselor who told him that he had not conducted any classification hearing and that Plaintiff could not be removed from his culinary position until there was a hearing on his RVR. The next day, Mendez and Battad contacted J. McNeil in "RJD inmate assignments" and used the false document to persuade McNeil to "unassign" Plaintiff from his culinary job. *Id.* at 24.

On August 30, 2016, Plaintiff learned that Defendant F. Griez, a Correctional Officer, was forbidding Enhanced Outpatient ("EOP") inmates working their shifts in the kitchen. Instead, Grisez was letting inmates who were not cleared to for work to "volunteer," in violation of regulations. *Id.* at 36. When Lewis asked Grisez about the EOP inmates, Grisez stated "I know who you are Lewis, the snitch, 602 guy." *Id.* at 27. Grisez then told the volunteer inmates that Plaintiff had "snitched" on them and they would no longer be able to volunteer in the kitchen. *Id.* Plaintiff filed a 602 about the situation. He alleges Paramo refused to classify the 602 as a complaint against staff and improperly

---

[6] Lewis alleges that on August 24, 2016, Hammett altered the language of his RVR and omitted the portion about Lewis putting his fingers in Hammett's face and instead, "restructured the RVR to fit Battad's allegations of [Plaintiff] leaving the culinary" without permission and allowing the cereal to burn. FAC at 25–26.

rejected it.[7]

On September 14, 2016, the hearing was held on the August 6, 2016 RVR prepared by Hammett. Lewis presented evidence that the report was false and created to retaliate against him for reporting to the MAC and filing grievances about problems in the kitchen. *Id.* at 26. The hearing officer found Lewis not guilty of the RVR and dismissed it. The next week, Mendez called Lewis to the culinary area. He told Lewis that if he dropped his 602 grievance, he would return Lewis and McCloud to their previous positions in the kitchen. Lewis agreed to withdraw the 602 and Mendez hired him back. *Id.*

In December of 2016, Lewis also learned that Grisez and Mendez were attempting to set up a plan under which they would split double shifts so they could each have four days off. *Id.* at 28. They also asked inmate culinary workers to do the same. When Lewis found out about the scheme, he wrote a report to the MAC. *Id.* Around the same time, inmates at RJD were posting videos of themselves in prison. One video showed Defendant R. Esquilin ("Esquilin"), a Correctional Officer, sleeping while on duty. *Id.* at 28–29. Esquilin believed Plaintiff and the MAC were responsible for posting the videos of him sleeping. *Id.* at 29. On January 27, 2017, Plaintiff learned Mendez and Esquilin were attempting to have him removed from his position on the MAC and his kitchen job. To that end, Esquilin "created a false document or removed documents from Plaintiff's central file." *Id.* Lewis wrote another 602 alleging Esquilin was retaliating against him for filing complaints. *Id.*

On February 6, 2017, Lewis learned that Grisez was going to fire the morning culinary workers who refused to participate in his and Mendez's "double-shift" plan. *Id.* Lewis filed a 602 about that but Defendant Daniel Paramo ("Paramo"), the Warden, refused

---

[7] In his lengthy FAC, Plaintiff notes he reported misconduct related to retaliation by staff to Warden Paramo on numerous occasions, by sending letters, submitting several grievances and, in at least one case, speaking to him by telephone. *See* FAC at 5–8, 25, 28–29, 37–38, 40.

to process it. The next day, Plaintiff noticed there were again "volunteers" working in the kitchen without security clearance. *Id.* at 29–30. Lewis wrote a Form 22, reporting that Grisez was violating regulations by allowing non-culinary inmates work in the kitchen. *Id.* at 30. A staffer showed the Form 22 to Grisez. Later that day, Grisez accused Lewis, who was making eggs that morning, of attempting to take three eggs. Lewis explained that the eggs were cracked and therefore "spillage." Lewis had set them aside so that he could account for all the eggs he had been given. Grisez prepared a "false" RVR, stating that Lewis had been stealing food. *Id.* Ultimately, Lewis was found not guilty of the RVR and the charges were dismissed. *Id.* at 31.

Plaintiff claims Defendants violated his First Amendment rights by retaliating against him for filing MAC reports and grievances regarding the kitchen conditions. He also contends his due process and equal protection rights were violated by Defendants submitting false RVRs. *Id.* at 4–12. He seeks money damages and injunctive relief. *Id.* at 14.

**C.      42 U.S.C. § 1983**

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To state a claim under section 1983, Plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015).

**D.      Discussion**

Lewis names eight defendants in his FAC, Daniel Paramo, N. Hammett, J. Mendez, R. Battad, F. Grisez, R. Esquilin, R. Davis and Connie Gipson and raises six claims. FAC at 1–2, 4–11. In claims one and three, Lewis contends Mendez, Battad, Hammet, Grisez and Esquilin violated his First Amendment rights when they retaliated against him for submitting grievances. FAC at 4, 9, 34, 36. In his second and fourth claims, he alleges

Mendez, Battad, Hammett, and Grisez violated his due process rights. *Id.* at 8, 10, 34–36. On the fifth claims, he contends Paramo violated his constitutional rights when he failed to supervise and stop the retaliation by other staff. *Id.* at 11. In his sixth claim, he alleges Davis violated his due process and equal protection rights when he ordered Plaintiff confined to quarters and altered his classification after a purported rule violation. *Id.* at 41–43.

### 1.  *Defendant Gipson*

Plaintiff lists Connie Gipson, Director of Adult Institutions at CDCR, as a defendant in the caption of his FAC. *See* FAC at 1. He has not, however, alleged any specific constitutional violation attributable to her, nor does he provide any factual allegations regarding Gipson in the body of his FAC. To state a claim, Plaintiff must individually link each defendant to an alleged constitutional violation. *See generally*, Fed. R. Civ. P. 8(a). Moreover, to the extent that Plaintiff has attempted to sue Gipson under a theory of supervisory liability, Plaintiff has not alleged facts to support such state a claim. Supervisory personnel are generally not liable under § 1983 for the actions of their employees. *See Iqbal*, 556 U.S. at 676. When a named defendant holds a supervisory position, the causal link between her and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Plaintiff must allege facts indicating that a supervisory defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy "so deficient that the policy itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor v. List*, 880 F .2d 1040, 1045 (9th Cir. 1989). Because Lewis has failed to do so as to Gipson, he has failed to state a claim against her. *See Iqbal*, 556 U.S. at 678; 28 U.S.C. § 1915(e)(2)(B)(ii); *Watison*, 668 F.3d 1108, 1112 (9th Cir. 2012).

### 2.  *Due Process Claims*

11

In claims two, four and six, Plaintiff contends Davis, Mendez, Battad, Hammett and and Grisez violated his due process rights. The Fourteenth Amendment provides that the State shall not "deprive any person of life, liberty or property, without due process of law." U.S. Const. Amend. XIV, § 1. Procedural due process applies only to deprivations of protected liberty or property interests. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989); *Ingraham v. Wright*, 430 U.S. 651, 672, (1977); *Burnsworth v. Gunderson*, 179 F.3d 771, 774 (9th Cir. 1999). To state a due process claim, Lewis must adequately allege "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564–571 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Serrano*, 345 F.3d at 1077. These procedural protections, however, "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Courts must determine the level of the hardship on a case-by-case basis by considering: "(1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence." *Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486–87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064–65 (9th Cir. 2013). Only if the

prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

### a.   Davis

Lewis alleges Davis violated his due process rights when Davis ordered him CTQ for longer than regulations permitted. FAC at 42. Lewis also contends Davis improperly ordered Lewis's classification changed from A-1 to C-status without a classification hearing, preventing Lewis being able to work or earn good time credits. *Id.* Specifically, Lewis contends that on September 6, 2014, Daviss assessed Lewis 10 days CTQ for a rule violation that had occurred in August 2014.[8] On September 11, 2014, a RVR hearing was held and Davis assessed Lewis an additional 10 days CTQ, "continuous." *Id.* at 39. Lewis alleges this was in violation of 15 Cal. Code Regs. § 3375 which limits CTQ punishment to 10 consecutive days. *Id.* at 42. After the September 11, 2014 RVR finding was invalidated, another hearing was held on October 11, 2014. *Id.* Lewis refused to attend the hearing because Davis was again the SHO. Davis found Lewis guilty and ordered him CTQ for 60 days and changed Lewis's classification from A-1 to C-status. Inmates classified C-status are not permitted to work or earn good time credits. *Id.* Lewis contends this punishment was in violation of California regulation which require a Classification Hearing before changing an inmate's status. *Id.* at 40, 43.

First, Lewis has failed to allege sufficient facts to show confinement to quarters for more than 10 consecutive days is an "atypical and significant deprivation" giving rise to a liberty interest. *See Gordon v. Maycayo*, 43 F. App'x 67, 68 (9th Cir. 2002) (concluding the plaintiff failed adequately allege confinement to quarters for sixty days was an "atypical and significant deprivation" giving rise to a liberty interest when he "failed to failed to present any evidence comparing his condition confinement during the sixty days to the

---

[8] Lewis does not specify the nature of the purported rule violation. Nor does he indicate if the 10 days CTQ was assessed after a hearing.

conditions of his prior prison life."). Moreover, classification at a higher custody level does not by itself place an "atypical or significant hardship" on an inmate sufficient to give rise to a protected liberty interest. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (inmates do not have a liberty interest in their "classification status [or] eligibility for rehabilitative programs"); *see also Sandin*, 515 U.S. at 486 (placing an inmate in administrative segregation for thirty days "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007); *Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1985).

Finally, the Due Process Clause does not create a property or liberty interest in prison employment." *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) (quoting *Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986)); *Bravot v. Cal. Dep't of Corr.*, No. 05-cv-0113-FCD-GGH, 2006 WL 47398, at *4 (E.D. Cal. Jan. 9, 2006) ("Since plaintiff does not have a constitutional right to a prison job, much less to a particular job, he is not entitled to due process procedural protections prior to being deprived of his work, nor is he constitutionally entitled to any back wages for the loss of that job nor to reinstatement in his old position, which reinstatement he has nevertheless apparently attained at this point."). Therefore, Lewis has failed to state a due process claim against Davis.[9] *See* 28

---

[9] Even if Plaintiff were able to state a claim, his claim, it would likely be untimely. Because Section 1983 does not have its own statute of limitation, the appropriate period is that of the forum state's statute of limitations for personal injury torts. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994). In California, the general statute of limitations for personal injury actions is the two years. Cal. Civil Pro.Code § 335.1. Under California law, the statute of limitations is tolled for an additional two years for prisoners, *see* Cal. Civ. Proc. Code § 352.1(a), which is also applicable to § 1983 actions. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *see also Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999). Thus, an inmate typically has four years to bring a § 1983 claim for damages in California, i.e., the regular two-year period under section 335.1 plus two years during which accrual was postponed due to the disability of imprisonment.

U.S.C. § 1915(e)(2)(B)(ii); *Watison*, 668 F.3d 1108, 1112 (9th Cir. 2012).

      **b.**     **Mendez, Battad, Hammett, Grisez and Esquilin[10]**

Lewis contends his due process rights were violated by Mendez, Battad and Hammett, when they removed him from his kitchen job assignment in August of 2016 without adhering to CDCR protocols. FAC at 22–23. Lewis also alleges Battad and Mendez made "false" reports stating that on August 6, 2016, Lewis had left his job without permission and let the cereal burn. *Id.* at 24. In addition, he contends Hammett submitted a "false" RVR concerning the same incident. *Id.* at 25. A hearing on the RVR took place on September 14, 2016 and Plaintiff was found not guilty. *Id.* at 26. After the hearing, Mendez told Lewis he could have his job back if he withdrew his administrative grievance. Plaintiff ultimately did so and he was hired back in the kitchen. *Id.*

In another similar, incident, Lewis contends Esquilin wrote a purportedly false RVR, accusing Plaintiff of "stealing food" from the kitchen. *Id.* at 29. He states that Mendez and Grisez were trying to get him removed from his culinary position because he was reporting their misconduct. *Id.* at 29–30. On January 27, 2017, another kitchen worker told Lewis that Grisez and Esquilin were discussing having Lewis fired from both his MAC position and his job in the kitchen. That same day, Esquilin put a "false document" in Plaintiff's file. *Id.* at 30. On February 7, 2017, Grisez wrote a "false" RVR. *Id.*

To the extent Lewis claims his due process rights were violated by Mendez, Battad, Hammett, Grisez and Esquilin of making "false" allegations of misconduct, Lewis fails to state a claim. A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). If prisoner is afforded procedural due process in the disciplinary hearing, as Lewis was here, allegations of a fabricated charge fail to state a

---

[10] While Esquilin is not named in the second and fourth claims for due process violations, by his allegations, it appears that Lewis may be seeking a due process challenge against him.

claim under § 1983. *Freeman*, 808 F.2d at 951 (although a prisoner has the right not to be deprived of a protected liberty interest without procedural due process, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"); *Garrott v. Glebe*, 600 Fed. App'x 540, 545 (9th Cir. April 22, 2015) (noting there is no clearly established federal law that "a prisoner has a right to be free from false accusations"); *Smith v. Albee*, No. 2:15-cv-1598 KJN, 2016 WL 6094471, at \*4 (E.D. Cal. Oct. 18, 2016) (stating the "falsification of disciplinary reports does not state a stand-alone constitutional claim," because "[t] here is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"); *Williams v. Foote*, No. 08-cv-2838-CJC-JEM, 2011 WL 6968033, at \*16 (C.D. Cal. Oct. 5, 2011) ("Absent a showing of retaliation for the exercise of constitutionally protected rights, prisoners do not have a constitutional right to be free from wrongfully issued disciplinary reports."), adopted by 2012 WL 71747 (Jan. 5, 2012); *see also King v. Jauregui*, No. 2:19-cv-04938-DOC-GJS, 2020 WL 5804080, at \*4 (C.D. Cal. Aug. 11, 2020).

As to temporarily losing his job, as discussed above, due process does "does not create a property or liberty interest in prison employment." *Walker*, 370 F.3d 969, 973 (9th Cir. 2004) (quoting *Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986)); *Bravot v. Cal. Dep't of Corr.*, No. 05-cv-0113-FCD-GGH, 2006 WL 47398, at \*4 (E.D. Cal. Jan. 9, 2006) ("Since plaintiff does not have a constitutional right to a prison job, much less to a particular job, he is not entitled to due process procedural protections prior to being deprived of his work, nor is he constitutionally entitled to any back wages for the loss of that job nor to reinstatement in his old position, which reinstatement he has nevertheless apparently attained at this point."). Thus, Plaintiff's due process claims are dismissed without prejudice for failure to state a claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Watison*, 668 F.3d 1108, 1112 (9th Cir. 2012).

### 3. *Equal Protection Claim*

Lewis also appears to raise an equal protection claim against Davis. *See* FAC at 41. The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that defendants intentionally discriminated against a plaintiff based on his membership in a protected class, *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702–03 (9th Cir. 2009); *Serrano*, 345 F.3d at 1082, or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Department of Agr.*, 553 U.S. 591, 601–02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

Plaintiff's allegations are insufficient to state an equal protection claim because he fails to identify the protected class of which he is purportedly a member and how Davis (or any other defendant) discriminated against him because of his membership in that class. *See* FAC at 41. Lewis states that staff "discriminat[ed] against African American disabled inmates" but fails to identify if he is a member of a protected class himself. *Id.* at 38. Plaintiff must at least describe similarly situated prisoners who received different treatment *than Plaintiff* such that Defendants' actions towards him were irrational and arbitrary. Lewis's conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678. Therefore, he has failed to state an equal protection claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Watison*, 668 F.3d 1108, 1112 (9th Cir. 2012).

### 4. *Retaliation Claims*

In claims one, three and five, Lewis alleges Paramo, Hammett, Mendez, Battad, Grisez, and Esquilin violated his First Amendment rights when they retaliated against him for submitting grievances and reporting to the MAC on the conditions in the kitchen. FAC at 4, 9, 11, 34, 36–37. Taking the allegations contained in the FAC as true, the Court finds that Lewis's First Amendment claims against Hammett, Mendez, Battad, Grisez, Paramo and Esquilin survive the "low threshold" set for *sua sponte* screening pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *see also Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005) (holding a prisoner plaintiff must adequately allege the following to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose); *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (finding that prison officer filing false disciplinary action against inmate in retaliation for inmate's use of grievance system is sufficient adverse action for a First Amendment retaliation claim); *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) ("[A] claim that a supervisory official knew of unconstitutional conditions and 'culpable actions of his subordinates' but failed to act amounts to 'acquiescence in the unconstitutional conduct of his subordinates' and is 'sufficient to state a claim of supervisory liability.'") (quoting *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011).

## IV.   CONCLUSION AND ORDER

Based on the foregoing, the Court:

1.      **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 7).

2.      **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $ 10 in accordance with 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3.      **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, by U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4.     **DISMISSES** Plaintiff's Equal Protection and Due Process claims as to all Defendants and **DISMISSES** all of Plaintiff's claims against Defendants CONNIE GIPSON and R. DAVIS, for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

5.     **DIRECTS** the Clerk to issue summonses as to Plaintiff's First Amended Complaint (ECF No. 6) upon Defendants DANIEL PARAMO, N. HAMMETT, J. MENDEZ, R. BATTAD, F. GRISEZ, and R. ESQUILIN, and forward them to Plaintiff along with a blank U.S. Marshal Forms 285. In addition, the Clerk will provide Plaintiff with certified copies of this Order, a certified copy his First Amended Complaint, and the summonses so that he may serve the Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the Forms 285 as completely and accurately as possible, include an address where Defendants may be served, *see* S.D. Cal. Civ. L.R. 4.1.c, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

6.     **ORDERS** the U.S. Marshal to serve a copy of the First Amended Complaint and summons upon Defendants DANIEL PARAMO, N. HAMMETT, J. MENDEZ, R. BATTAD, F. GRISEZ, and R. ESQUILIN as directed by Plaintiff on the USM Forms 285 provided, and to file executed waivers of personal service upon Defendants DANIEL PARAMO, N. HAMMETT, J. MENDEZ, R. BATTAD, F. GRISEZ, and R. ESQUILIN with the Clerk of Court as soon as possible after their return. Should a Defendant fail to return the U.S. Marshal's request for waiver of personal service within 90 days, the U.S. Marshal shall instead file the completed Form USM 285 Process Receipt and Return with the Clerk of Court, include the date the summons, First Amended Complaint and request for waiver was mailed to that Defendant, and indicate why service upon the party remains unexecuted. All costs of that service will be advanced by the United States; however, if a Defendant located within the United States fails, without good cause to sign and return the waiver requested by the Marshal on Plaintiff's behalf, the Court will impose upon the

Defendant any expenses later incurred in making personal service. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

7. **ORDERS** Defendants, once they have been served, to reply to Plaintiff's First Amended Complaint, and any subsequent pleading they may file in this matter in which they are named as parties, within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (stating that while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility  under section 1983," once the Court has conducted its *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and thus, has made a preliminary determination based on the face on the pleading that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

8. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon the Defendants, may be disregarded.

**IT IS SO ORDERED.**

Dated:  October 13, 2022

Hon. Gonzalo P. Curiel
United States District Judge