1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17
18
19
20

| | |
|---|---|
| BRIAN DEVERICK LEWIS, CDCR #J-49028 | Case No.:  3:22-cv-0029-GPC-DEB |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** [Dkt. No. 32.] |
| vs. | |
| DANIEL PARAMO, Warden, A. HAMMETT, J. MENDEZ, R. BATTAD, F. GRISEZ, R. ESQUILIN, | |
| Defendants. | |

21
22
23
24
25
26
27
28

Brian Deverick Lewis ("Plaintiff"), a state inmate currently housed at California State Prison, North Kern, in Delano, California is proceeding pro se and in forma pauperis with a first amended complaint pursuant to 42 U.S.C. § 1983.  (Dkt. No. 6, FAC.)  Plaintiff claims that while incarcerated at the R.J. Donovan Correctional Facility ("RJD") in San Diego, California, during 2016 and 2017, his First Amendment rights were violated when Defendants RJD Correctional Officers N. Hammett ("Hammett"), J. Mendez ("Mendez"), R. Battad ("Battad"), F. Grisez ("Grisez"), and R. Esquilin ("Esquilin"), collectively ("Defendants"), retaliated against him for filing grievances and reports to the Men's

Advisory Council ("MAC") concerning conditions in the kitchen and filing grievances about their retaliatory conduct.  (*Id.*)  Plaintiff also claims that Defendant Warden Daniel Paramo ("Warden Paramo") violated his First Amendment right when he failed to supervise and stop the retaliation.  (*Id.*)

Currently pending is Defendants' motion for summary judgment that: (1) Plaintiff has failed to exhaust administrative remedies on a number of claims and (2) certain of his allegations are untimely and barred by the applicable statute of limitations.  (Dkt. No. 32.) Plaintiff filed a response on February 5, 2024.[1]  (Dkt. No. 49.)  On February 20, 2024, Defendants filed a reply.  (Dkt. No. 50.)  For the following reasons, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment.

## Background

Plaintiff filed the original complaint on January 4, 2022.[2]  (Dkt. No. 1.)  On June 13, 2022, a first amended complaint ("FAC") was filed.[3]  (Dkt. No. 6.)  According to the FAC, Plaintiff was housed at RJD from September 2012 until July 2017 and was a part of the RJD's MAC[4] since 2014.  (Dkt. No. 6, FAC at 4, 15.[5])  Due to significant MAC complaints by inmates about RJD culinary and its food shortages, in February 2016, Plaintiff became Chairman of the MAC Safety Committee and designated to deal with Facility A's culinary

---

[1] Plaintiff's opposition was originally due on December 8, 2023, (Dkt. No. 38), but, at a status hearing on January 26, 2024, Plaintiff stated that he mailed his opposition on December 7, 2023 but it was sent to the wrong court address.  (Dkt. No. 48.)  Therefore, Plaintiff was provided with the correct address and ordered to mail his opposition.  (*Id.*)

[2] The Court applies the mailbox rule where the complaint is filed at the time it is delivered to the prison officials for forwarding to the district court.  *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (holding *Houston* mailbox rule applies to § 1983 suits filed by pro se prisoners) (citing *Houston v. Lack*, 487 U.S. 266, 276 (1988)).

[3] On October 13, 2022, the Court, on *sua sponte* review pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, dismissed Defendants Gipson and Davis, dismissed Claims Two and Four alleging due process and equal protection claims for failing to state a claim, and directed U.S. Marshal service upon the remaining Defendants on Plaintiff's First Amendment claims only.  (Dkt. No. 8.)

[4] The Men's Advisory Council was established by the warden "to advise and communicate with the warden and other staff those matters of common interest and concern to the inmate general population." Cal. Code Regs. tit. 15, § 3230 (1)(a) (2016).

[5] Page numbers are based on the CM/ECF pagination.

2

issues.  (*Id.* at 4, 19.)  All culinary issues were directed to Plaintiff through the MAC complaint forms.  (*Id.* ¶ 41.)

On February 18, 2016, Plaintiff issued a report about the filthy conditions in culinary noting the roaches and rats, clogged drains causing flooding and daily water backups, rotting floors from flooding and the constant sour smell.  (*Id.* ¶ 36.)  He also revealed how inmate food trays were being washed in trash cans.  (*Id.*)  He reported that hundreds of gallons of water were being wasted and the work environment between staff and inmates was hostile with chronic issues and there was low morale.  (*Id.* ¶¶ 37, 38.)  Because Plaintiff's position on the MAC Safety Committee involved monthly reports about conditions in the culinary, this reporting angered kitchen staff. (*Id.* ¶¶ 39-41.) Subsequently, during July 2016-July 2017, Plaintiff claims he was subject to a concerted effort of retaliation by Defendants for reporting on various conditions/issues in the kitchen as well as reporting on Defendants' retaliatory conduct.  (*Id.* at 4, 5.)

Claims One and Three of the FAC allege Defendants Mendez, Battad, Hammett, Grisez and Esquilin violated Plaintiff's First Amendment right when they retaliated against him for submitting grievances and reports to the MAC on the conditions in the kitchen and for filing grievances against their retaliatory conduct.  (Dkt. No. 6, FAC at 4, 9, 34, 36.) On the Fifth Claim, Plaintiff contends Defendant Warden Paramo violated his constitutional rights when he failed to supervise and stop the retaliation by other staff.  (*Id.* at 11.)

## Legal Standard

### A.    Legal Standard on Summary Judgment for Failure to Exhaust

Summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On a motion for summary judgment on the issue of exhaustion, the moving party bears the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (*en banc*).  Once the defendant has met its burden, the prisoner has the

burden of production and "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (*citing Hilao v. Estate of Marcos,* 103 F.3d 767, 778 n. 5 (9th Cir. 1996) (the "burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.")). Ultimately, the defendant bears the burden of proof. *Id.*

For purposes of summary judgment, a court must "view all of the facts in the record in the light most favorable to the non-moving party and rule, as a matter of law, based on those facts." *Albino*, 747 F.3d at 1173 (citing *San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys.,* 568 F.3d 725, 733 (9th Cir. 2009)). A court will grant summary judgment under Rule 56 "[i]f undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust." *Id.* at 1166. The court must deny summary judgment "if material facts are disputed," but the "district judge rather than a jury, should determine the facts" pertaining to exhaustion. *Id.*

## B.   PLRA Exhaustion

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. 632, 635 (2016) (quoting 42 U.S.C. § 1997e(a)); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Exhaustion "gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94; *see also Jones v Bock*, 549 U.S. 199, 204 (2017) ("Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."). Failure to exhaust under § 1997e(a) is an affirmative defense which the defendants have the burden of raising and proving the absence of exhaustion. *Jones*, 549 U.S. at 216 ("We conclude

that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

The PLRA requires compliance with "deadlines and other critical procedural rules, with no exceptions for special circumstances." *Ramirez v. Collier*, 595 U.S. 411, 421 (2022) (internal quotation marks and citations omitted).  "[P]roper exhaustion . . . 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford,* 548 U.S. at 90 (emphasis in original) (citation omitted).

Moreover, the PLRA's exhaustion requirement extends only to available administrative remedies, and "a failure to exhaust a remedy that is effectively unavailable does not bar a claim from being heard in federal court." *McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015).  In *Ross,* the Court articulated "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross,* 578 U.S. at 643.  They arise when: (1) the exhaustion procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the prison's exhaustion scheme is "so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44.  According to Supreme Court authority, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218 (recognizing that the grievance procedures will differ from system to system and claim to claim but ultimately compliance with the prison's grievance procedures satisfies exhaustion).

## C.   CDCR's Grievance System

When the events in the FAC took place from July 2016 and July 2017, there were three formal levels of administrative review in the California Department of Corrections

and Rehabilitation ("CDCR").  *See* Cal. Code Regs. tit. 15, § 3084.5 (2016).[6]  During this time, the CDCR's grievance system provided that an inmate may administratively appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a) (2016).  To administratively exhaust available remedies, "a prisoner must submit his complaint on CDCR Form 602 and proceed through several levels of appeal: (1) first formal-level appeal filed with one of the institution's appeal coordinators, (2) second formal-level appeal filed with the institution head or designee, and (3) third formal-level appeal filed with the CDCR director or designee."  *Henderson v. Muniz*, 196 F. Supp. 3d 1092, 1101 (N.D. Cal. 2016) (citing Cal. Code Regs. tit. 15, § 3084.7).  "[A]dministrative remedies are deemed exhausted" when "subject to a third level of review."  Cal. Code Regs. tit. 15, § 3084.1(b); § 3084.7(d)(3) (2016).  A "cancellation or rejection decision does not exhaust administrative remedies."  Cal. Code Regs., tit. 15, § 3084.1(b) (2016).

Inmates are required to state "all facts known and available to him/her regarding the issue being appealed at the time of submitting the [Form 602]."  Cal. Code Regs., tit. 15, § 3084.2(a)(4) (2016).  Inmates are also required to "list all staff member(s) involved and . . . describe their involvement in the issue," by stating "the staff member's last name, first initial, title or position."  Cal. Code Regs., tit. 15, § 3084.2(a)(3) (2016).  If the inmate did not have this information, he or she was required to provide "any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question."  *Id.*  Administrative remedies would not be considered exhausted for any "new issue, information, or person" later named by an inmate "not included in the originally submitted CDCR Form 602."  Cal. Code Regs. tit. 15, §

---

[6] For appeals filed prior to June 1, 2020, a prison inmate in California satisfied the administrative exhaustion requirement by following the procedures set forth in sections 3084 to 3084.9 of Title 15 of the California Code of Regulations (repealed eff. June 1, 2020).  (Dkt. No. 32-6, Blanding Decl. ¶ 2); *see also Wimberly v. Cuevas*, No. 19cv8316-SI, 2021 WL 879881, at *4 n.1 (N.D. Cal. Mar. 9, 2021).

3084.1(b) (2016).

## Discussion

## A.    Exhaustion of Administrative Remedies of Unopposed Claims

Defendants argue that the claims against Defendants Mendez, Battad, Hammett, Grisez and Warden Paramo, and certain claims against Defendant Esquilin must be dismissed for Plaintiff's failure to exhaust administrative remedies.  (Dkt. No. 32-2.)  In his opposition, Plaintiff does not challenge Defendants' argument or provide any competing evidence whether the claims against Defendants Mendez, Battad, Hammett, Grisez and Warden Paramo and certain claims against Defendant Esquilin are unexhausted.[7]  (*See* Dkt. No. 49.)

As such, because Defendants have met their burden showing Plaintiff failed to exhaust available administrative remedies on the allegations in the FAC as to Defendants Mendez, Battad, Hammett, Grisez and Warden Paramo, as required by 42 U.S.C. § 1997e(a), and Plaintiff has not opposed by argument or presenting evidence to create a genuine issue of material fact, the Court GRANTS Defendants' motion for summary judgment and dismisses the claims against Defendants Mendez, Battad, Hammett, Grisez and Warden Paramo.  These claims include the following:

---

[7] In his sur-reply, which the Court accepted for filing due to his pro se status, Plaintiff summarily asserts that because Defendants provided false facts as to the timeliness of Appeal Log No. RJD-A-17-0279, discussed below on statute of limitations, he now "objects to the entire motion, for it contains additionally pretextual arguments, further false allegations in regards to Plaintiff's 602 activity and a false declaration."  (Dkt. No. 51 at 2 (emphasis in original).)  Plaintiff explains that he did not address every argument in Defendants' motion because there are falsities as to the majority of their arguments and he should not be required to respond to a sham summary judgment motion.  (*Id*. at 2-3.)  The Court disagrees with Plaintiff's legally unsupported argument that he need not specifically address each argument opposing a summary judgment motion if it is filled with falsities.  As stated in the Court's *Klingele/Rand* Notice Warning, on summary judgment, once the defendants have met their burden by making a motion that is properly supported by declarations, Plaintiff "must set out specific facts in affidavits or declarations, depositions, admissions, interrogatory answers, or other authenticated documents, as provided by Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that a material fact is genuinely disputed and requires trial."  (Dkt. No. 34 at 2.)  A summary objection will not suffice.

1        1) The FAC alleges retaliation by Defendants Mendez,[8] Battad and Hammett, in

2    August and September 2016, for removing Plaintiff from his culinary position, contacting

3    Plaintiff's clinician to disapprove him for work clearance, informing Plaintiff's

4    correctional counselor of false information about Plaintiff, and submitting a false RVR

5    report against him when Plaintiff raised complaints against them for replacing Inmate

6    McCloud from his position in culinary with unassigned and unauthorized "Close A

7    Custody" inmates.  (Dkt. No. 6, FAC ¶¶ 42-121.)  Plaintiff filed grievances but did not

8    fully exhaust administrative remedies in Appeal Log No. RJD-A-16-3735, (Dkt. No. 32-7,

9    Blanding Decl., Ex. H; Dkt. No. 32-6, Blanding Decl. ¶ 8(h) ("The grievance was not

10   exhausted because it was screened out at the first level of review and Plaintiff did not re-

11   file."), and Appeal Log No. RJD-A-16-3931, (Dkt. No. 32-7, Blanding Decl., Ex. J at 145;

12   Dkt. No. 32-6, Blanding Decl. ¶ 8(j) ("This appeal was not exhausted because it was

13   screened out without follow-up from Plaintiff.").

14       2) The FAC also alleges retaliation by Defendant Grisez,[9] in September 2016, for

15   informing the unauthorized Hispanic workers that Plaintiff had "snitched on all the

16   volunteers" when he questioned Grisez about his discriminatory conduct against African

17   American and EOP inmates and Defendant Warden Paramo's refusal to step in to address

18   the retaliation by his staff and his refusal to classify the grievance as a staff complaint.

19   (Dkt. No. 6, FAC ¶¶ 122-134.)  Plaintiff filed a grievance for the alleged retaliation by

20   Grisez and Defendant Warden Paramo's failure to supervise by stopping the retaliation but

21   he did not fully exhaust administrative remedies in Appeal Log No. RJD-A-16-3920, (Dkt.

22   No. 32-7, Blanding Decl., Ex. I at 135; Dkt. No. 32-6, Blanding Decl. ¶ 8(i) ("The

23   grievance was not exhausted because it was screened out at the first level of review and

---

[8] In fact, Plaintiff concedes he did not exhaust the retaliation claim, at least as to Defendant Mendez, alleging that he withdrew it.  (Dkt. No. 6, FAC ¶¶ 114-120.)

[9] In this Form 602, while Plaintiff does not name Defendant Grisez in the Form 602, by stating on August 29, 2016, "Kitchen Officer __", it appears he intended to name Grisez.  (*See* Dkt. No. 32-7, Blanding Decl., Ex. I at 137; Dkt. No. 6, FAC ¶ 133.)

Plaintiff did not re-file.").

3) The FAC further claims retaliation by Defendants Esquilin, Grisez[10] and Mendez, between February to July 2017, for threatening to remove Plaintiff from his culinary and MAC positions, showing documents from Plaintiff's central file to other inmates and falsely reporting Plaintiff was stealing eggs when Plaintiff reported their work shift scheme.  (Dkt. No. 6, FAC ¶¶ 135-42, 147-67.).  Plaintiff filed grievances but failed to exhaust them in Appeal Log No. RJD-A-17-1669, (Dkt. No. 37-8, Blanding Decl., Ex. R at 5; Dkt. No. 32-6, Blanding Decl. ¶ 8(r) ("The grievance was not exhausted because it was screened out and canceled at the first level of review without further filings from Plaintiff."); Appeal Log No. RJD-A-17-2299, (Dkt. No. 32-8, Blanding Decl., Ex W at 71; Dkt. No. 32-6, Blanding Decl. ¶ 8(w) ("The appeal was withdrawn on June 1, 2017");[11] and Appeal Log No. RJD-X-17-4637, (Dkt. No. 32-8, Blanding Decl., Ex. AA at 109, 117-18; Dkt. No. 32-6, Blanding Decl. ¶ 8(aa) ("The appeal was not exhausted because it was screened out without being pursued further by Plaintiff.").[12]

4) The FAC alleges retaliation by Defendant Esquilin, on January 5, 2017, threatening to search Plaintiff's cell for writing complaints against Esquilin.  (Dkt. No. 6, FAC ¶ 177.)  Plaintiff filed a grievance but did not fully exhaust administrative remedies in Appeal Log No. RJD-A-17-0061, (Dkt. No. 32-7, Blanding Decl., Ex. L at 174-76 (The Second Level of Review conducted an inquiry conducted, and concluded that Esquilin did not violate CDCR policy but Plaintiff did not appeal to the Third Level.)).

---

[10] Plaintiff misspells Grisez name as Grishiz and Grishem.  (Dkt. No. 32-8, Blanding Decl., Ex. R at 5.)
[11] Plaintiff's attempt to reinstate RJD-A-17-2299 was unsuccessful.  (Dkt. No. 32-8, Blanding Decl., Ex. AC at 143, 144, 148, 159; *id.*, Ex. AE at 183; Dkt. No. 32-9, Moseley Decl. ¶ 22; Dkt. No. 32-10 Moseley Decl., Ex. 15 at 238.)
[12] In another grievance, Appeal Log No. RJD-A-17-0198, Plaintiff complained that Defendant Esquilin and non-party Ruealas were playing cards while on duty in violation of department regulations. (Dkt. No. 32-7, Blanding Decl., Ex. N at 189.)  He also stated that these officers sleep while on duty, play cards and engage in other conduct in violation of regulations.  (*Id.*)  The Court notes that the grievance only reports staff misconduct and does not allege any retaliation by Esquilin.  However, ultimately, Plaintiff withdrew the grievance on February 14, 2017 stating that the issue had been addressed.  (*Id.* at 190.)

5) Lastly, the FAC claims, on January 5, 2017, Defendant Esquilin threatened to search inmate cells if Plaintiff did not stop writing complaints against him. (Dkt. No. 6, FAC ¶¶ 177, 180-82.) Plaintiff submitted a grievance but failed to fully exhaust to the Third Level Appeal in Appeal Log No. RJD-A-17-0082, (Dkt. No. 32-7, Blanding Decl., Ex. M at 182, 185-86 (the Second Level of Review conducted an inquiry but concluded that staff did not violate CDCR policy on February 7, 2017)).

The record for Appeal Log No. RJD-A-17-0082 includes Plaintiff's attempt to request his appeal decision at the Second Level of Review which he claims he did not receive for six months. While Plaintiff, on summary judgment, did not challenge the failure to exhaust the retaliation claim against Defendant Esquilin for threatening to search inmate cells if Plaintiff did not stop writing complaints about him, the Court notes that any challenge, nonetheless, would be unmeritorious.

Form 602 in Appeal Log No. RJD-A-17-0082 indicates the Second Level decision was mailed or delivered to Plaintiff on March 16, 2017. (Dkt. No. 32-7, Blanding Decl., Ex. M at 181.) On July 17, 2017, Plaintiff submitted Form 602 in Appeal Log No. RJD-X-17-4428 claiming he did not receive a response to Appeal Log No. RJD-A-17-0082 stating he had been waiting over six months for a decision and sent multiple unsuccessful Form 22s[13] requesting his appeal decision. (Dkt. No. 32-8, Blanding Decl., Ex. Z at 90-92.) On July 27, 2017, Appeal Log No. RJD-X-17-4428 was rejected at the First Level of Review and documents returned because they were not an appeal and he was directed to

---

[13] "Inmates and parolees may request interviews with staff and/or request items and services via a written request process," pursuant to a "CDCR Form 22 (10/09), Inmate/Parolee Request for Interview, Item or Service." 15 Cal. Code Regs. §§ 3086(a), (c) (2016). A Form 22 was intended to facilitate the "timely resolution of routine matters through an effective and non-conflictive communication process," pursuant to which, "Department staff shall attempt to resolve inmate and parolee issues expeditiously." *Id.* § 3086(a). Once an employee receive an inmate completed Form 22, the employee must "[a]ccept, date and sign the form" and provide the bottom copy of the employee signed form to the inmate. *Id.* § 3086(f)(1)-(2). Within three working days after receipt of the Form 22, the responding employee must "[n]ote his or her decision or action on the form", [s]ign and date the form", "[r]etain a copy for his or her records", and "[r]eturn the original and remaining copy of the form to the inmate . . ." *Id.* § 3086(f)(4)(A)-(D).

use Form 22 for appeal inquiries.  (*Id.* at 102.)  The rejection also stated that his appeal had been mailed to him on March 16, 2017.  (*Id.*)  In response, Plaintiff repeated that he did not receive the decision even though the appeal decision states it was mailed out on March 16, 2017 and requested that they either process the appeal or cancel it so he can appeal the cancellation.  (*Id.*)

Plaintiff then continued to pursue exhaustion of Appeal Log No. RJD-A-17-0082 to the Third Level of Review.  On January 4, 2018, the Office of Appeals acting as the Third Level of Review returned Plaintiff's documents, concerning RJD-A-17-0082, because they were not an appeal.  (Dkt. No. 32-10, Moseley Decl., Ex. 6 at 57.)  Then, over a month later, on February 15, 2018, the Office of Appeals determined the prior screen out letter was in error and cancelled Appeal Log No. RJD-A-17-0082 because Plaintiff had not timely filed the appeal in violation of section 3084.6(c)(4)[14] since the Second Level decision was provided to him on March 16, 2017.  (*Id.* at 58.)  The letter also explained that a separate appeal can be filed on the cancellation decision and only if the appeal on the cancellation is granted may the original appeal be resubmitted.  (*Id.*)  Plaintiff does not appear to have pursued the appeal of the cancellation.

On this retaliation claim against Defendant Esquilin, the Court concludes that while there were some barriers during Plaintiff's attempt to exhaust Appeal Log. No. RJD-A-17-0082, administrative remedies were still available as he was informed he could appeal the cancellation but failed to do so.  It also does not appear that any of the *Ross* exceptions to the exhaustion rule apply when administrative remedies are not available.  *See Ross*, 578 U.S. at 643-44 (administrative remedies are not available where the (1) the exhaustion procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the prison's exhaustion scheme is "so

[14] An appeal may be cancelled for any of the following reasons. . . (4) Time limits for submitting the appeal are exceeded even though the inmate . . . had the opportunity to submit within the prescribed time constraints."  Cal. Code Regs., Cal. Code Regs. tit. 15, § 3084.6(c)(4) (2016).

1    opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary

2    prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates

3    from taking advantage of a grievance process through machination, misrepresentation, or

4    intimidation."). Further, based on the record, Plaintiff was extremely well versed in filing

5    grievances as well as appealing them to the Third Level of Review. (*See* Dkt. No. 32-6,

6    Blanding Decl. ¶ 8 (Plaintiff submitted 31 first level grievances with the Office of

7    Grievance ("OOG") from October 2015 through September 2017); Dkt. No. 32-9, Moseley

8    Decl. ¶ 9 (Plaintiff submitted 13 appeals to the Office of the Appeals ("OOA") between

9    January 1, 2016 and May 31, 2020 of which 5 are relevant to the FAC).) On top of that,

10   Plaintiff had previously successfully appealed the cancellation of RJD-A-17-0279 on April

11   5, 2017. (Dkt. No. 32-7, Blanding Decl., Ex. O at 198; Dkt. No. 32-7, Blanding Decl., Ex.

12   Q at 211-12.) Ultimately, Plaintiff has failed to meet his burden by not opposing or

13   supplying any evidence to create a genuine issue of disputed material fact on whether he

14   exhausted the retaliation claim against Esquilin in Appeal Log. No. RJD-A-17-0082.

15   Therefore, the Court concludes Plaintiff failed to exhaust administrative remedies on the

16   retaliation claim against Defendant Esquilin on January 5, 2017 for threatening to search

17   inmate cells if Plaintiff did not stop writing complaints.

18       In conclusion, Defendants have met their burden demonstrating that Plaintiff has

19   failed to exhaust administrative remedies as to claims of retaliation by Defendants Mendez,

20   Battad, Hammett, Grisez and Warden Paramo, and certain claims against Defendant

21   Esquilin, and because Plaintiff has not provided any competing arguments or evidence, the

22   Court GRANTS Defendants' motion for summary judgment on these claims.[15]

23   / / /

24

25   ---

[15] In the FAC, Plaintiff further alleges that Defendants recruited an inmate to attack Plaintiff in which he

26   suffered severe injury and was hospitalized for ten days and Defendants did not report the incident but
     instead orchestrated a cover up. (Dkt. No. 6, FAC at 5.) He claims the attack was orchestrated in

27   retaliation for Plaintiff filing grievances to the CDCR Ombudsman. (*Id.*) However, no Form 602 was
     submitted by Plaintiff regarding this incident and he has failed to exhaust this claim. (*See* Dkt. No. 32-7,

28   Blanding Decl. ¶ 8 (listing all appeal between October 2015 through September 2017).)

**B.     Exhausted Grievance, Appeal Log No. RJD-A-17-0279**

Defendants admit that the retaliation claim against Esquilin for showing Plaintiff's confidential documents to other inmates because Plaintiff filed grievances against him, (Dkt. No. 6, FAC ¶ 148), is exhausted in Appeal Log No. RJD-A-17-0279.  (*See* Dkt No. 32-2 at 21; Dkt. No. 50 at 4-5; Dkt. No. 37-2, Blanding Decl., Ex. O at 198, 200.)  The parties disagree as to which Defendants are subject to that exhausted grievance. Defendants claim that it only concerns Defendant Esquilin and the claims against the remaining Defendants are not preserved.  (Dkt. No. 50 at 4-6.)  On the other hand, Plaintiff maintains his grievance includes misconduct by all Defendants and includes Esquilin, Warden Paramo, Battad, Hammett, Grisez and Mendez.  (Dkt. No. 49 at 4.)

**1.     FAC Allegations**

According to the FAC, in December 2016, Plaintiff learned that Defendant Grisez, the PM culinary officer, and Defendant Mendez, the AM culinary officer, were attempting to set up a plan where they would swap shifts so they could each work 2.5 days and have 4.5 days off.  (Dkt. No. 6, FAC ¶¶ 135-38.)  They also asked inmate culinary workers to do the same.  (*Id.* ¶¶ 139, 140.)  While the PM workers agreed, the AM workers did not. (*Id.* ¶ 140.)  When Plaintiff found out, he wrote a report to the MAC.  (*Id.* ¶ 142.)  On January 27, 2017, Plaintiff learned Defendants Grisez and Esquilin, in retaliation, were attempting to have him removed from his position on the MAC and his kitchen job.  (*Id.* ¶ 147.)  Plaintiff also alleges Esquilin retaliated against Plaintiff and "created a false document or removed documents from Plaintiff's central file and showed the document to the inmates."  (*Id.* ¶ 148.)  On January 27, 2017, Plaintiff claims he submitted a Form 602 alleging "Esquilin and culinary staff were going to remove him from his position for filing complaints against them."  (*Id.* ¶ 149.)

**2.     Exhaustion of Grievance – Appeal Log No. RJD-A-17-0279**

On January 27, 2017, Plaintiff submitted a Form 602, Appeal Log. No. RJD-A-17-0279, alleging that Esquilin was leading a conspiracy with culinary staff to retaliate against Plaintiff for filing complaints against him.  (Dkt. No. 37-2, Blanding Decl., Ex. O at 198-

200.)  Specifically, on that date, Plaintiff was told by an inmate that Esquilin was going to "get [Plaintiff]" and showed the inmate a document from Plaintiff's central file and was told Esquilin was going to refer Plaintiff to the classification committee and have Plaintiff removed from his job.   (*Id.*)   Plaintiff asserts that he previously complained to administrative staff at RJD, "mainly to Warden Paramo, asking them [sic] to interview and stop the intimidation and retaliation by his officers." (*Id.* at 200.)  He explained he was subject to similar retaliation when Hammett and Battad removed Plaintiff from his job due to his complaints about misconduct in August 2016.  (*Id.*)  At the time, he requested the parties involved be given a polygraph to assess the truth but that did not happen.  (*Id.*)  He further asserts that on three occasions in January 2017, he approached three officers at the Facility A program office to complain about Esquilin and non-party Ruelas but nothing was done.  (*Id.*)  He claims Warden Paramo refused to supervise the correctional officers who are using bully tactics and threat group mentality.  (*Id.*)  Plaintiff also alleges that he saw Esquilin remove food from the Kosher food cart and sleeping on duty on 10 occasions. (*Id.*)

When the Second Level of Review determined that the staff did not violate CDCR policy, he appealed to the Third Level of Review and requested a polygraph and wrote, "[a]s I predicted on 2-7-17 Kitchen Off. Grisez . . . removed me from my assigned job position without due process.  On 6-13-17 I was taken to classification and removed from my job." (Dkt. No. 32-10, Moseley Decl., Ex. 4 at 26.)  The Third Level of Review denied his appeal on December 27, 2017 and did not address the new issues added to the appeal because they went beyond the claims raised in the original Form 602 grievance.  (Dkt. No. 32-10, Moseley Decl., Ex. 4 at 23.)

### 3.   Analysis

The PLRA requires "proper exhaustion," which "demands compliance with a prison's deadlines and other critical procedural rules." *Merchant v. Corizon Health, Inc*., 993 F.3d 733, 742 (9th Cir. 2021) (quoting *Woodford*, 548 U.S. at 90).  As such, under CDCR regulations, inmates are required to state "all facts known and available to him/her

regarding the issue being appealed at the time of submitting the [Form 602]."  Cal. Code Regs., tit. 15, § 3084.2(a)(4) (2016).  Inmates are limited to "one issue or related set of issues per each [Form 602] submitted [and must] "not combine unrelated issues on a single appeal form."  Cal. Code Regs., tit. 15, § 3084.2(a)(1) (2016).  Inmates are also required to "list all staff member(s) involved and . . . describe their involvement in the issue," by stating "the staff member's last name, first initial, title or position."  Cal. Code Regs., tit. 15, § 3084.2(a)(3) (2016).  If the inmate did not have this information, he or she was required to provide "any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." *Id.*  Administrative remedies would not be considered exhausted for any "new issue, information, or person" later named by an inmate "not included in the originally submitted CDCR Form 602."  Cal. Code Regs., tit. 15, § 3084.1(b) (2016).

Here, Appeal Log No. RJD-A-17-0279, addresses an incident on January 27, 2017, where Plaintiff was informed by an unnamed inmate that Esquilin said he was going to "get [Plaintiff]" and showed a document from his central file and said that he would be taking Plaintiff to classification and removing him from his job.  (Dkt. No. 32-7, Blanding Decl., Ex. O at 200.)  The grievance claims that Defendant Esquilin is leading a conspiracy to retaliate against Plaintiff due to filing of complaints memorializing Esquilin's conduct. (*Id.*)  Because Esquilin is the only named Defendant concerning the incident on January 27, 2017, the Court concludes that Esquilin is the only named Defendant in Appeal Log. No. RJD-A-17-0279.

### a.   Defendants Hammett and Battad

In the grievance, Plaintiff's reference to conduct by Defendants Hammett and Battad in August 2016 provides background of similar alleged retaliatory conduct which was already raised in a prior grievance that was not fully exhausted, (*see* Dkt. No. 32-7, Blanding Decl., Ex. H; Dkt. No. 32-7, Blanding Decl., Ex. J; Dkt. No. 32-6, Blanding Decl. ¶¶ 8(h), 8(j)), and do not concern the conduct on January 27, 2017.  To the extent it could be argued that Defendants Hammett and Battad are named in the grievance, the claims

would be untimely because the conduct by Hammett and Battad occurred about five months before Appeal Log No. RJD-A-17-0279 was submitted on January 27, 2017.  *See* Cal. Code Regs., tit. 15, § 3084.8(b)(1) ("an inmate ,. . . must submit the appeal within 30 calendar days of: (1) The occurrence of the event or decision being appealed, or; (2) Upon first having knowledge of the action or decision being appealed, . . . .").  Therefore, the alleged retaliatory incident on January 27, 2017, in Appeal Log No. RJD-A-17-0279, are not against Defendants Hammett and Battad.

### b.   Defendants Grisez and Mendez

Further, the grievance does not name Defendants Grisez or Mendez.  To the extent that Plaintiff may argue that "unchecked misconduct of correctional officers here at RJD" references Defendants Grisez or Mendez, the California Code of Regulations require that the inmate list all staff members involved, if known.  *See* Cal. Code Regs., tit. 15, § 3084.2(a)(3) (2016).[16]  Here, Plaintiff obviously knew the identities of the staff members involved.  In addition, although Plaintiff names Defendant Grisez alleging he removed Plaintiff from his job on February 7, 2027, he was first named before the Third Level of Review and a new person not included in the original Form 602 cannot be considered for purposes of exhaustion.  *See* Cal. Code Regs., tit. 15, § 3084.1(b) (2016).  Therefore, Plaintiff's failure to identify Defendants Grisez and Mendez in the Form 602 bars the claims against them.

### c.   Defendant Warden Paramo

Finally, Defendants reply that the grievance does not support any claims Plaintiff has raised against Warden Paramo in the FAC.  (Dkt. No. 50 at 6.)  The Court agrees.  The FAC does not allege a failure to supervise by Warden Paramo around January 27, 2017.  Rather the FAC alleges numerous summary allegations against Warden Paramo.  For

---

[16] Inmates are also required to "list all staff member(s) involved and . . . describe their involvement in the issue," by stating "the staff member's last name, first initial, title or position."  Cal. Code Regs., tit. 15, § 3084.2(a)(3) (2016).

16

example, Plaintiff claims that Defendant Warden Paramo ignored years of Plaintiff's complaints about staff misconduct. (Dkt. No. 6, SAC at 5.) Plaintiff maintains he even wrote to Warden Paramo about 15 times about different staff misconduct and "[a]ll but 1 of these letters were responded to and Warden Paramo never took a single action to prevent further misconduct by his staff." (*Id.* at 6.) Plaintiff claims that Warden Paramo, during the time relevant to the FAC, routinely and arbitrarily refused to classify inmate appeals by RJD Correctional Officers and staff as staff complaints even with clear, detailed and verifiable misconduct. (*Id.* ¶¶ 8, 9, 16.) Finally, while the FAC claims that Plaintiff repeatedly sent personal letters to Warden Paramo during his incarceration at RJD, these letters were sent to Warden Paramo in 2016, not around January 27, 2017. (*Id.* ¶¶ 221-22; 226-33.) Also, the Court recognizes the FAC alleges Warden Paramo failed to supervise his staff on two specific dates, August 22, 2016 and September 1, 2016[17], but not regarding alleged failure to supervise on January 27, 2017.[18] (*Id.* ¶¶ 105, 133.)

Therefore, the grievance against Warden Paramo for failure to supervise on January 27, 2017, in Appeal Log No. RJD-A-17-02790, does not concern any allegations in the FAC. *See e.g., Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (allegations in a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."); *Rhudy v. Melendez*, Case No.: 16CV3026 JAH (BGS), 2018 WL 785820, at *5 (S.D. Cal. Feb. 8, 2018) (plaintiff must provide dates of when events allegedly occurred in the complaint to provide defendants

---

[17] As discussed above, Plaintiff failed to exhaust administrative remedies as to the failure to supervise regarding alleged retaliation on September 1, 2016. (*See* Dkt. No. 32-7, Blanding Decl., Ex. I at 135; Dkt. No. 32-6, Blanding Decl. ¶ 8(i).)

[18] The FAC also alleges on September 20, 2016, Warden Paramo failed to classify a grievance as a staff complaint against Grisez, (Dkt. No. 6, FAC ¶ 134), and Warden Paramo failed to process the appeal against Grisez and Mendez on February 6, 2016, (*id.* ¶¶ 152, 153). These do not allege a failure to supervise by Warden Paramo. Further, the FAC alleges that on January 12 and 19, 2017, Plaintiff complained about Esquilin to RJD officers which was passed on to Warden Paramo. (*Id.* ¶ 150.) This allegation does not demonstrate that Warden Paramo knew about the claims of January 12, and 19, 2017 and does not concern the alleged retaliation on January 27, 2017.

1  with fair notice and the ability to defend themselves).

2       As such, the Court concludes that Esquilin is the only named Defendant in Appeal

3  Log. No. RJD-A-17-0279.

4  **C.    Statute of Limitations[19]**

5       Ultimately, Defendants do not dispute that three grievances, Appeal Log No. RJD-

6  A-17-0279, Appeal Log. No. RJD-A-17-0303, and Appeal Log No. RJD-A-17-2141 have

7  been exhausted.  (Dkt. No. 32-1 at 21.)  As discussed above, Appeal Log No. RJD-A-17-

8  0279 addresses an incident on January 27, 2017, where Plaintiff was informed by an

9  unnamed inmate that Esquilin said he was going to "get [Plaintiff]" and showed a document

10 from his central file and said that he would be taking Plaintiff to classification and

11 removing him from his job.  (Dkt. No. 32-7, Blanding Decl., Ex. O at 200.)  Second, Appeal

12 Log No. RJD-A-17-2141 concerns Defendant Esquilin calling Plaintiff a "snitch" in front

13 of several inmates on April 20, 2017, and a conspiracy led by Warden Paramo for failing

14 to discipline his officers.  (Dkt. No. 32-8, Blanding Decl., Ex. U at 43.)  Third, Appeal Log

15 No. RJD-A-17-0303 relate to allegations of Esquilin's misconduct for stealing food from

16 the Kosher meal cart on January 23, 2017, and a request that he not be subject to retaliation

17 for filing the grievance as he was in the past when Defendant Esquilin garnered inmates to

18 retaliate against him, conducted retaliatory cell searches and had his job targeted.  (Dkt.

19 No. 32-7, Blanding Decl., Ex. P at 206, 208.)  Even though the three grievances are

20 exhausted, Defendants argue that they are, nonetheless, barred by the statute of limitations.

21      Because section 1983 contains no specific statute of limitation, federal courts apply

22 the forum state's statute of limitations for personal injury actions.  *Jones v. Blanas*, 393

23 F.3d 918, 927 (9th Cir. 2004); *Maldonado v. Harris,* 370 F.3d 945, 954 (9th Cir. 2004).

24 The law of the forum state also governs tolling.  *Wallace v. Kato*, 549 U.S. 384, 394 (2007)

25

26

27 [19] Defendants filed a request for judicial notice of filings in support of their argument concerning the statute of limitations.  (Dkt. No. 32-4; Dkt. No. 32-2 at 27-28.)  Because the Court did not consider the documents as they were not relevant to the motion for summary judgment, the Court DENIES the request for judicial notice as moot.

28

(citing *Hardin v. Straub*, 490 U.S. 536, 538-39 (1989)); *Jones*, 393 F.3d at 927 (noting that in actions where the federal court borrows the state statute of limitation, the federal court also borrows all applicable provisions for tolling the limitations period found in state law).

California has a two-year statute of limitations for personal injury actions. *See* Cal. Civ. Proc. Code § 335.1. Further, California law tolls the statute of limitations for up to two years based on the disability of imprisonment for inmates with a less than life terms. *See* Cal. Civ. Proc. Code § 452.1. While Plaintiff has the burden of alleging facts that "would give rise to tolling . . . .", *Hinton v. Pacific Enter.*, 5 F.3d 391, 395 (9th Cir. 1993), in this case, Defendants appear to accept that section 452.1 tolling applies through their analysis. (Dkt. No. 32-2 at 25.) Therefore, the Court applies a four-year statute of limitations on Plaintiff's claims.

While state law governs the statute of limitation and tolling, federal law governs when a claim accrues. *Wallace*, 549 U.S. at 388. "Accrual is the date on which the statute of limitations begins to run . . . ." *Lukovsky v. City of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). A cause of action accrues when "the inmate knows of the acts . . . and knows that he was injured," but that "courts apply equitable tolling to extend limitations while the inmate exhausts his administrative remedies." *Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018); *Brown v. Valoff,* 422 F.3d 926, 943 (9th Cir. 2005) ("the applicable statute of limitations [is] tolled while a prisoner completes the mandatory exhaustion process.").

Initially, Defendants argued that the claims in Appeal Log No. RJD-A-17-0279 were barred by the statute of limitations because the Third Level Appeal Decision was decided on December 27, 2017, and because the complaint was filed on January 4, 2022, the four year statute of limitations had passed. (Dkt. No. 32-2 at 24-27; Dkt. No. 32-10, Moseley Decl., Ex. 4 at 23.) In opposition, Plaintiff presents competing evidence that even though the Third Level Appeal Decision in Appeal Log No. RJD-A-17-0279 was made on December 27, 2017, it was not mailed or delivered to him until January 5, 2018; therefore,

his claim is timely because the complaint was filed on January 4, 2022.[20]  (Dkt. No. 49 at 2; Dkt. No. 49, Lewis Decl., Ex. B at 9.)  Defendants reply that, in light of this new evidence which they did not previously possess, they agree that the allegations raised against Esquilin in Appeal Log No. RJD-A-17-0279 survive summary judgment.  (Dkt. No. 50 at 2.)

Here, the statute of limitation began to run on January 27, 2017, the date of the alleged retaliatory conduct by Defendant Esquilin, and because Plaintiff filed a grievance on January 27, 2017, the parties agree that the statute of limitations was tolled until, at least, January 5, 2022.  Therefore, because Plaintiff has raised a genuine issue of material fact as to whether his retaliation claim against Defendant Esquilin is timely, to which Defendants agree, the Court DENIES Defendants' motion for summary judgment on the retaliation claim against Esquilin in Appeal Log No. RJD-A-17-0279.

Defendants also contend the allegations in Appeal Log No. RJD-A-17-0303 and Appeal Log No. RJD-A-17-2141, though exhausted, are time-barred.[21]  In Appeal Log No. RJD-A-17-0303, the Third Level Appeal Decision was rendered on July 25, 2017; therefore, Defendants contend the statute of limitations expired on July 25, 2021.[22]  (Dkt. No. 32-10, Moseley Decl., Ex. 3 at 11; Dkt. No. 54-1, Harder Decl. ¶¶ 9, 10.)  Also, the

---

[20] Both parties present Side 2 of Form 602, (*Compare* Dkt. No. 32-10, Moseley Decl., Ex. 4 at 26 *with* Dkt. No. 49, Lewis Decl., Ex. B at 9); however, Plaintiff's version includes a complete version that includes the date that the Third Level Decision was mailed or delivered in Section G.

[21] On March 8, 2024, because Plaintiff had provided a complete version of Form 602 in Appeal Log. No. RJD-A-17-0279, the Court directed Defendants to file complete versions of Form 602 in Appeal Log No. RJD-A-17-0303 and Appeal Log No. RJD-A-17-2141.  (Dkt. No. 53.)  On March 14, 2024, Defendants responded that because of their procedure for the digital recording of grievances, which are done prior to mailing out any decisions, their digital records do not typically include a date stamped for when the decision was mailed or delivered.  (Dkt. No. 54-1, Harder Decl. ¶¶ 6-8.)  However, Defendants declare that decision letters are placed in the outgoing mail on or around the date stamped on the decision letter.  (*Id.* ¶ 8.)  They declare that the Third Level Appeal Decision in Appeal Log No. RJD-A-17-0303 was likely mailed out on July 26, 2017, and Appeal Log No. RJD-A-17-2141 was likely mailed out on December 29, 2017 based on the last modification on these appeals.  (*Compare id.* ¶¶ 9-12 *with* ¶ 13.)

[22] Plaintiff filed the grievance on the day of the alleged retaliatory conduct on April 20, 2017.  (Dkt. No. 32-6, Blanding Decl. ¶ 8(u).)

Third Level Decision in Appeal Log No. RJD-A-17-2141 was made on December 26, 2017; therefore, Defendants claim the statute of limitations expired on December 26, 2021.[23]  (Dkt. No. 32-10, Moseley Decl., Ex. 5 at 42.)  Because Plaintiff has not provided any evidence to the contrary, the Court GRANTS Defendants' motion for summary on claims presented in Appeal No. RJD-A-17-0303 and Appeal Log No. RJD-A-17-2141 as barred by the statute of limitations.

## Conclusion

Based on the above, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment.  The Court GRANTS summary judgment on all claims in the FAC except DENIES Defendants' motion for summary on the First Amendment retaliation claim against Defendant Esquilin for alleged conduct on January 27, 2017.

IT IS SO ORDERED.

Dated:  April 9, 2024

Hon. Gonzalo P. Curiel
United States District Judge

---

[23] Plaintiff filed the grievance on the day of the alleged retaliatory conduct on January 23, 2017.  (Dkt. No. 32-6, Blanding Decl. ¶ 8(p).)